USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/28/10

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------- X

SECURITIES AND EXCHANGE
COMMISSION,
          **Plaintiff,**

    - against -

GARY S. BECKER, GREGORY S.
SCHAEFFER AND DILLON SCOTT
SECURITIES, INC.,

        **Defendants.**

-------------------------------------------------- X

**MEMORANDUM**
**OPINION AND ORDER**

**09 Civ. 5707 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

The Securities and Exchange Commission ("SEC") brings this action
against two individual defendants – Gary S. Becker and Gregory S. Schaeffer – for
their alleged involvement from 2001 through July 2007 in conducting an
unregistered offering fraud through the registered broker-dealer they controlled,
Dillon Scott Securities, Inc., and its parent company, non-defendant Gold Rush
Technologies, Inc., which they also controlled.[1] Despite numerous requests and
Court orders, defendants have failed to comply with their discovery obligations in

---

[1]    *See* Complaint ("Compl.") ¶ 1.

1

this case. The SEC now moves for a default judgment. For the reasons that follow, the SEC's motion is granted.

## II.    BACKGROUND[2]

According to the SEC, between 2001 and July 2007, defendants fraudulently sold unregistered Gold Rush securities to at least twenty-nine investors, at least ten of whom are sixty years or older, and eleven of whom were brokerage customers of Dillon Scott at the time they purchased the securities.[3] Defendants raised approximately $1.3 million in these three fraudulent and unregistered offerings.[4] As part of these offerings, defendants misrepresented to investors in the offering memoranda they distributed, and orally, that investments in Gold Rush would be used to form a broker-dealer and to expand the broker-

---

[2]      The facts have been drawn from the declaration of Susannah M. Dunn, counsel for the SEC as well as the Complaint. Because defendants have defaulted, this Court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor," except those relating to damages. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). In addition, defendants did not object to any content in Dunn's declaration, even though counsel was given the opportunity to do so in the proceedings before this Court on May 25, 2010. *See* 5/25 Hearing Transcript ("5/25 Hr'g Tr.") at 3:19-22, 10:4-11, 15:20-16:6.

[3]      *See* Compl. ¶ 1.

[4]      *See id.*

2

dealer's operations.[5]  Instead of using the investors' funds in the manner they

represented to investors, defendants used the funds for their personal gain.[6]  The

SEC also asserts that from May 2002 through the present, Becker and Schaeffer

knowingly and substantially assisted Dillon Scott in violating numerous regulatory

provisions governing broker-dealers.[7] The SEC filed this action in June 2009.

The SEC first served document requests on defendants on September

4, 2009.[8]  Defendants failed to respond.[9]  A conference was held before this Court

on December 9, 2009.[10]  At the conference, this Court ordered defendants to

comply with all outstanding discovery requests by December 14, 2009.[11]  On

December 14, 2009, defendants produced some documents, but the production was

materially deficient.[12]  On December 31, 2009, the SEC wrote a letter to defendants

---

[5]    *See id.* ¶ 2.

[6]    *See id.* ¶¶ 2, 29-31; Declaration of Sandra Yanez, staff examiner for
the SEC ("Yanez Decl.") ¶ 11.

[7]    *See* Compl. ¶¶ 3, 33-48.

[8]    *See* Declaration of Susannah M. Dunn, counsel for the SEC, in
Support of Default Judgment ("Dunn Decl.") ¶ 2.

[9]    *See id.* ¶¶ 2-3.

[10]    *See id.* ¶ 3.

[11]    *See* 12/9/09 Order, Ex. C to Dunn Decl.

[12]    *See* Dunn Decl. ¶ 4.

3

identifying the deficiencies (the "December 31 Letter"), but received no response.[13]

On February 5, 2010, another conference was held.[14]  At the conference, this Court ordered defendants to produce the documents identified in the December 31 Letter on pain of entry of default for failure to comply.[15]  On February 8, 2010, the Court ordered defendants to produce all responsive documents by March 5, 2010 or suffer the entry of a default judgment.[16]  On March 5, 2010, defendants provided a small, but substantially deficient document production.[17]  Defendants' counsel acknowledged that the production was deficient and offered to complete it by March 10, 2010.[18]  Defendants did not produce any additional documents until March 12, 2010 and, even then, acknowledged that the production remained incomplete.[19]  At this time, defense counsel stated that Schaeffer had ceased cooperating in his defense and was refusing to produce

---

[13]     *See id.*

[14]     *See id.* ¶ 5; 2/5/10 Hearing Transcript, Ex. F to Dunn Decl. ("2/5/10 Hr'g Tr.").

[15]     *See* Dunn Decl. ¶ 5; 2/5/10 Hr'g Tr. at 13:20-14:2.

[16]     *See* 2/8/10 Order, Ex. G to Dunn. Decl.

[17]     *See* Dunn Decl. ¶ 7.

[18]     *See id.*

[19]     *See id.*

4

responsive documents.[20]  In addition, despite this Court's direction at the February

5 conference, Becker refused to produce certain documents identified in the

December 31 Letter.[21]  The documents defendants have failed to produce include

(1) documents sufficient to show the location of their financial accounts or real

property owned and the current value of those assets, (2) a number of personal and

corporate tax returns, (3) W-2 and 1099 Forms provided to employees, including

Becker's 2006 1099 Form and 2003-2006 W-2 Forms, and (4) lead cards that

appear to have been used in the solicitation of Gold Rush investors.[22]  Dillon Scott

possesses responsive documents in California – Schaeffer's prior residence and

where Dillon Scott once had an office – as well as in the Bronx – where

Schaeffer's mother lives.[23]  Becker similarly has not produced the remaining

documents to which he has access, such as his personal tax returns and 1099 and

W-2 Forms.[24]

      Pursuant to this Court's February 8 Order, on March 15, 2010, the

---

[20]    *See id.*

[21]    *See id.* ¶ 9; 2/5/10 Hearing Transcript, Ex. F to Dunn Decl., at 12:17-14:2.

[22]    *See* Dunn Decl. ¶ 10; 5/25 Hr'g Tr. at 12:16-13:5.

[23]    *See* Dunn Decl. ¶ 8; 5/25 Hr'g Tr. at 8:16-9:9.

[24]    *See* Dunn Decl. ¶ 9; 5/25 Hr'g Tr. at 9:10-11:12.

SEC moved for an entry of default.  The SEC seeks a final judgment: (1)

permanently restraining and enjoining all defendants from violating the federal

securities laws; (2) requiring defendants to disgorge their ill-gotten gains in the

amount of $1,305,950 plus pre-judgment interest; (3) ordering defendants to pay

civil monetary penalties; and (4) ordering penny stock bars against Becker and

Schaeffer.  Defendants did not respond to the SEC's motion, but defendants'

counsel appeared before this Court on May 25, 2010.  During the May 25

conference, defendants' counsel  represented that Schaeffer has not returned his

telephone calls or participated in his own defense and that Becker continues to

refuse to produce the documents he was ordered to produce.[25]

## II.   APPLICABLE LAW

Rule 37(b) of the Federal Rules of Civil Procedure permits a court to

sanction a disobedient party for failing to comply with a discovery order.  Among

the sanctions available to the court is the ability to "render[] a default

judgment . . . ."[26]  "Although entry of default judgment is an extreme measure,

discovery orders are meant to be followed.  'A party who flouts such orders does

---

[25]     *See* 5/25 Hr'g Tr. at 2:13-16, 3:8-12, 9:18-10:6.

[26]     Fed. R. Civ. P. 37(b)(2)(A)(vi).

so at his peril.'"[27]

      In the Second Circuit, a default judgment is appropriate when a defendant's failure to comply with a discovery order is based on willfulness, bad faith, or fault.[28]  "[T]he court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained."[29]  Factors relevant to this determination include "(1) the willfulness of the noncompliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance; and (4) whether the noncompliant party had been warned of the consequences of his noncompliance."[30]

---

[27]    *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995) (quoting *Update Art, Inc. v. Modin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir. 1988)).

[28]    *See Shcherbakovskiy v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 135 (2d Cir. 2007).

[29]    *SEC v. McNulty*, 137 F.3d 732, 738, 739 (2d Cir. 1998) ("[D]efaults have been found willful where, for example, an attorney failed, for unexplained reasons, to respond to a motion for summary judgment, or failed, for flimsy reasons, to comply with scheduling orders.") (citations omitted).

[30]    *Davidson v. Dean*, 204 F.R.D. 251, 255 (S.D.N.Y. 2001) (citing *Bambu Sales*, 58 F.3d at 852-54). *Accord Shcherbakovskiy*, 490 F.3d at 138 ("[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."); *In re Fosamax Prods. Liab.* Litig., No. 07 Civ. 3652, 2010 WL 1779276, at *2 (S.D.N.Y. Apr. 27, 2010) ("Noncompliance with discovery orders is considered willful when the court's orders have been clear,

7

## III.   DISCUSSION

### A.   Default

There can be no dispute that defendants have deliberately and
repeatedly refused to comply with their discovery obligations and disregarded this
Court's orders.  Defendants intentionally and knowingly missed discovery
deadlines, submitted materially incomplete productions, and refused to comply
with this Court's clear and unambiguous orders to produce certain documents.
Each time a discovery response was due, defendants provided the SEC with
productions that were substantially tardy and woefully inadequate.  Defendants
know these records to exist and have access to them, but simply refuse to produce
them.  Symbolic of defendants' willingness to simply ignore their obligation to
participate in this litigation in good faith, defendants failed to even acknowledge –
must less respond to – the SEC's motion for default until the parties were ordered
to appear before this Court for the May 25, 2010.  I conclude from these facts that
defendants have been willfully noncompliant and have acted in bad faith.

Defendants' noncompliance has continued for more than six months
during which they refused to comply with their discovery obligations despite this
Court's order to do so and a warning that their failure to comply would result in an

when the party has understood them, and when the party's noncompliance is not
due to factors beyond the party's control.").

8

entry of default. Defendants have neither offered to complete their production nor attempted to justify their lack of compliance.[31] No lesser sanction than default will have any efficacy. As a result, an entry of default is warranted.

**B.    Permanent Injunctive Relief**

Section 20(b) of the Securities Act and section 21(d) of the Exchange Act empower the SEC to seek permanent injunctive relief upon a showing that (1) violations of the securities laws have occurred, and (2) there is a reasonable likelihood that violations will occur in the near future.[32] This Court "has broad discretion in deciding whether to grant or deny injunctive relief" in an SEC enforcement action.[33]

Having accepted all well-pleaded facts in the Complaint as true,

---

[31]    *See* 5/25 Hr'g Tr. at 9:22- (Court: "Mr. Becker's refusing to produce information about his personal banking records, banking, brokerage, his own account records, his own assets. . . . I ordered that, and he hasn't done it." Defense Counsel: "He hasn't done it, your honor." Court: "So I guess he's in default." Defense Counsel: "[Y]es, he is in default . . . with regard to your order . . . .").

[32]    *See SEC v. Commonwealth Chem. Sec., Inc.*, 574 F.2d 90, 99-100 (2d Cir. 1978); *see also SEC v. Unifund*, 910 F.2d 1028, 1036 (2d Cir. 1990) (holding that unlike private litigants, the SEC need not show risk of irreparable injury or the unavailability of remedies at law); *SEC v. Management Dynamics, Inc.*, 515 F.2d 801, 808-09 (2d Cir. 1975) (holding that standards of public interest, not requirement of private litigation, govern SEC requests for injunctive relief).

[33]    *SEC v. Lorin*, 76 F.3d 458, 461 (2d Cir. 1996) (per curiam). *Accord McNulty*, 137 F.3d at 736-37.

defendants' wrongful conduct occurred over a period of more than six and a half

years, and involved numerous, material misrepresentation to investors during an

unregistered offering of Gold Rush securities. They also violated, and aided and

abetted violations of, broker dealer regulatory provisions over several years.

Indeed, defendants "admit that cash was taken."[34] As a result of such conduct,

defendants are liable on each of the SEC's claims.[35] It is highly likely that, unless

enjoined, defendants will again violate the securities laws.[36] Therefore, to protect

_____

[34]     5/25 Hr'g Tr. at 7.

[35]     *See* Compl. ¶¶ 49-51 (violations of section 17(a) of the Securities
Act); *id.* ¶¶ 52-54 (violations of section 10(b) of the Exchange Act and Rule 10b-
5); *id.* ¶¶ 55-61 (violations by Dillon Scott of Section 15(c)(1) of the Exchange Act
and Rule 10b-3 and aiding and abetting of those violations by Becker and
Schaeffer); *id.* ¶¶ 62-65 (violations of sections 5(a) and 5(c) of the Securities Act);
*id.* ¶¶ 66-72 (violations by Dillon Scott of section 17(a) of the Exchange Act and
Rule 15b3-1 and aiding and abetting of those violations by Becker and Schaeffer);
*id.* ¶¶ 73-81 (violations of section 15(b)(7) of the Exchange Act and Rule 15b7-1
and aiding and abetting of those violations by Becker and Schaeffer); *id.* ¶¶ 82-85
(violations by Dillon Scott of section 17(a)(1) of the Exchange Act and Rule 17a-
3(a)(12) and aiding and abetting those violations by Becker and Schaeffer).

[36]     *See SEC v. Universal Major Indus.*, 546 F.2d 1044, 1048 (2d Cir.
1976) (holding that courts have wide discretion to impose an injunction in SEC
enforcement actions and noting that courts may consider factors such as "the
likelihood of future violations, the degree of scienter involved, the sincerity of
defendant's assurances against future violations, the isolated or recurrent nature of
the infraction, defendant's recognition of the wrongful nature of his conduct, and
the likelihood, because of defendant's professional occupation, that future
violations might occur"). *Accord SEC v. Credit Bancorp, Ltd.*, 195 F. Supp. 2d
475, 495 (S.D.N.Y. 2002) (issuing a permanent injunction forbidding trustee of
fraudulent investment firm involved in a Ponzi scheme from committing further

the public interest, the SEC's request for injunctive relief permanently enjoining

defendants from further violations of the federal securities laws is granted.  The

SEC is directed to submit a proposed order that is sufficiently specific and

complies with Rule 65(d)(1) of the Federal Rules of Civil Procedure.[37]

### C.    Disgorgement and Pre-Judgment Interest

"Once the district court has found federal securities law violations, it

has broad equitable power to fashion appropriate remedies, including ordering that

culpable defendants disgorge their profits."[38]  Here, the SEC has provided the

Declaration of Sandra Yanez, an SEC staff examiner, and documentary evidence

from which this Court can make a determination on damages without conducting a

hearing.[39]  Through this evidence, the SEC has demonstrated that the total amount

---

violations of securities laws where he solicited investors without any investigation
and with reckless disregard for the falsity of his claims even after he discovered
their falsity and persisted in denying any wrongdoing even though his conduct
occurred in the face of numerous red flags over a period of more than two years).

[37]    *See Lorin*, 76 F.3d at 461 (requiring an order permanently enjoining
defendants from violating the securities laws to specifically state the conduct
enjoined and the reasons for granting the injunction).

[38]    *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1475 (2d Cir. 1996).

[39]    *See* Yanez Decl. ¶ 5; Ex. B to Yanez Decl.  *See also Fustock v.
ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989) (holding that an
evidentiary hearing was unnecessary where detailed affidavits, documentary
evidence and a judge's knowledge formed a sufficient basis for damages awarded
in a default judgment).

of investor funds deposited into Gold Rush bank accounts was $1,306,950 from twenty-nine investors.[40]  Of this amount, Becker and Schaeffer used more than one million dollars to enrich themselves through ATM and cash withdrawals, personal travel and restaurant expenses, and checks made out to Becker and Schaeffer, two others who sold the Gold Rush stock, and two purported employees who worked in the Gold Rush office.[41]  The remaining amount appears to have been used for business expenses, including funding the fraudulent Gold Rush offerings, as well as broker-dealer related expenses.[42]

I find that the SEC has provided a reasonable approximation of the profits gained by defendants in connection with their substantial violations.[43] Accordingly, the SEC's request for disgorgement in the amount of $1,306,950 is

---

[40]     See Yanez Decl. ¶¶ 8-11.

[41]     See id.

[42]     See id.

[43]     See SEC v. Universal Express, 475 F. Supp. 2d 412, 428 (S.D.N.Y. 2007) ("The amount of disgorgement 'need only be a reasonable approximation of profits causally connected to the violation,' and 'any risk of uncertainty [in calculating the amount] should fall on the wrongdoer.'  As it is difficult in many cases to separate 'legal from illegal profit, . . . it is proper to assume that all profits gained while defendants were in violation of the law constituted ill-gotten gains.'") (quoting SEC v. Patel, 61 F.3d 137, 139-40 (2d Cir. 1995) and SEC v. Bilzerian, 814 F. Supp. 116, 118 (D.D.C. 1993)).

granted.[44]  Disgorgement plus pre-judgment interest shall be paid on a joint and

several basis by all defendants because of their collaboration and close relationship

in the fraud.[45]  The SEC is to submit a calculation for the pre-judgment interest that

complies with the IRS underpayment rate.[46]

### D.    Civil Penalties

Section 20(d) of the Securities Act and section 21(d)(3) of the

Exchange Act permit a court to impose a civil penalty that falls under one of three

"tiers," which increase depending on the seriousness of the violation.  Under the

third – and highest – tier, a court may award civil monetary penalties against an

individual defendant, not to exceed the greater of $130,000 per violation, or the

gross amount of his pecuniary gain, if the court determines that his actions

involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a

---

[44]     *See SEC v. Manor Nursing Ctrs.* Inc., 458 F.2d 1082, 1104 (2d Cir.
1972) ("We hold that it was appropriate for the district court to order [defendants]
to disgorge the proceeds received in connection with the [securities] offering.");
*SEC v. Opulentica, LLC*, 479 F. Supp. 2d 319, 330 (S.D.N.Y. 2007) (ordering
disgorgement based on entire sum unlawfully obtained through a fraudulent
offering).

[45]     *See SEC v. AbsoluteFuture.com*, 393 F.3d 94, 97 (2d Cir. 2004)
(holding that the court has discretion to impose joint and several liability on
collaborating or closely related defendants provided that the total disgorgement
amount does not exceed the combined profits of all defendants).

[46]     *See* 17 C.F.R. § 201.600(b); *First Jersey*, 101 F.3d at 1476.

regulatory requirement," where the violations also "resulted in substantial losses or created a significant risk of substantial losses to other persons."[47]

For a period of six and a half years, Becker and Schaeffer engaged in a fraudulent, unregistered offering of securities and knowingly (or at a minimum recklessly) made material misrepresentations to investors about the use of offering proceeds. This conduct was egregious, demonstrates that they acted with a high degree of scienter, and resulted in substantial losses – over $1.3 million to twenty-nine investors. In light of Becker's and Schaeffer's intentional misrepresentations and the extent of their fraudulent activities – enriching themselves with investor funds – a civil penalty is "necessary to persuade [defendants] not to engage in this conduct again."[48] It is therefore appropriate to order civil penalties at the gross amount of pecuniary gain to Becker and Schaeffer as a result of the violation.

**E.    Penny Stock Bar**

The SEC is also seeking a penny stock bar against Becker and Schaeffer. The district court is authorized by statute to order a penny stock bar

---

[47]    15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). *See Universal Express*, 475 F. Supp. 2d at 429 (holding that third tier civil penalties were warranted where defendants engaged in numerous and inexcusable instances of securities law violations over the course of at least four years and gained approximately ten million dollars in relation to these violations).

[48]    *SEC v. Drucker*, 528 F. Supp. 2d 450, 453 (S.D.N.Y. 2007).

"against any person participating in, or, at the time of the alleged misconduct, who was participating in, an offering of penny stock."[49] The SEC asserts that Gold Rush's securities qualify as a "penny stock" as defined by section 3(a)(51) of the Exchange Act and Rule 3a51-1, but have provided no such evidence. Therefore, the SEC's request for a penny stock bar as to Becker and Schaeffer is denied, without prejudice, and with a right to renew this application upon presentation of proper evidentiary support.

## IV.   CONCLUSION

For the foregoing reasons, the SEC's motion for a default judgment against all defendants is granted. The SEC is directed to submit a proposed order of final judgment in accordance with this Opinion and Order. The Clerk of the Court is directed to close this motion (Docket No. 25).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             May 28, 2010

---

[49]     15 U.S.C. § 77t(g).

15

## -Appearances-

### For Plaintiff:

James A Clarkson, Esq.
Richard G. Primoff, Esq.
Susannah M. Dunn, Esq.
Securities & Exchange Commission
3 World Financial Center, Room 4300
New York, New York 10281
(212) 336-0060

### For Defendants:

Edwin Peralta-Millan, Esq.
Law Office of Edwin Peralta-Milan
304 Grand Concourse
Bronx, New York 10451
(718) 585-2320