UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

SECURITIES AND EXCHANGE
COMMISSION,
                Plaintiff,

- against -

GARY S. BECKER, GREGORY S.
SCHAEFER AND DILLON SCOTT
SECURITIES, INC.,

                Defendants.

------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/8/10

**MEMORANDUM**
**OPINION AND ORDER**

**09 Civ. 5707 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      The Securities and Exchange Commission ("SEC") brings this action against two individual defendants – Gary S. Becker and Gregory S. Schaefer – and the registered broker-dealer they controlled – Dillon Scott Securities, Inc. – for their participation in an unregistered offering fraud.[1] On May 28, 2010, this Court granted the SEC's motion for a default judgment and much of the relief sought, but denied the SEC's request for a penny stock bar against Becker and Schaefer due to

---

    [1]    *See* Complaint ("Compl.") ¶ 1.

1

insufficient evidence.[2] On June 7, 2010, the SEC provided further information and renewed its motion for a penny stock bar against Becker and Schaefer. For the reasons that follow, the SEC's motion is granted.[3]

## II. BACKGROUND[4]

Between 2001 and July 2007, Becker and Schaefer fraudulently sold unregistered securities of Gold Rush Technologies, Inc. to at least twenty-nine investors in three different offerings.[5] At least ten of those investors are sixty years or older and eleven were brokerage customers of Dillon Scott at the time they purchased the securities.[6] Defendants raised approximately $1.3 million in these

---

[2] *See SEC v. Becker*, No. 09 Civ. 5707, 2010 WL 2165083 (S.D.N.Y. May 28, 2010).

[3] Although defendants did not oppose the SEC's initial motion for default judgment, defendants indicated that they wished to oppose the SEC's renewed motion for penny stock bars. That opposition was due June 21, 2010. On its due date, counsel for defendants wrote a letter advising the Court that his office had suffered a flood and some of his files had been damaged. He requested a four day extension to submit his opposition, which was granted. That opposition was never filed and the Court has had no further communication with defendants or their counsel. Thus, the Court has deemed the motion fully briefed.

[4] A more detailed description of the facts and procedural history of this case are set forth in the Court's prior opinion in this action, *see Becker*, 2010 WL 2165083, familiarity with which is assumed.

[5] *See* Compl. ¶ 1.

[6] *See id.*

three fraudulent and unregistered offerings.[7]

## III. APPLICABLE LAW

Penny stocks are "low-priced, highly speculative stocks generally sold in the over-the-counter . . . market and generally not listed on an exchange."[8] An equity security is considered a penny stock as long as it (1) is not registered and did not trade on a national securities exchange; (2) is not an "NMS stock," as defined in 17 C.F.R. § 242.600(b)(47);[9] (3) has a value less than five dollars per share; and (4) has tangible net assets of less than two million dollars or six million dollars for the last three years.[10]

A district court is authorized to order a penny stock bar "against any person participating in, or, at the time of the alleged misconduct, who was participating in, an offering of penny stock."[11] A person "participating in" an offering of penny stock "includes any person engaging in activities with a broker, dealer, or issuer for purposes of issuing, trading, or inducing or attempting to

---

[7] *See id.*

[8] *Koch v. SEC*, 177 F.3d 784, 785 n.1 (9th Cir. 1999) (citation omitted).

[9] An NMS stock is a security other than an option for which transaction reports are collected, processed, and made available pursuant to an effective transaction reporting plan.

[10] *See* 17 C.F.R § 240.3a51-1

[11] 15 U.S.C. § 77t(g).

induce the purchase or sale of, any penny stock."[12]

The standard for imposing a penny stock bar mirrors that for imposing an officer-or-director bar.[13] The Second Circuit has considered the following factors when considering the imposition of an officer-and-director bar:

> (1) the "egregiousness" of the underlying securities law violation; (2) the defendant's "repeat offender" status; (3) the defendant's "role" or position when he engaged in the fraud; (4) the defendant's degree of scienter; (5) the defendant's economic stake in the violation; and (6) the likelihood that misconduct will recur.[14]

The court may order a penny stock bar "conditionally or unconditionally, and permanently or for such period of time as the court shall determine."[15]

## IV. DISCUSSION

The evidence, described below, demonstrates that the imposition of a penny stock bar against Becker and Schaefer is warranted in this case. *First*, it appears uncontested that Gold Rush securities qualify as a "penny stock" during the relevant period. The SEC alleged that the Gold Rush securities – Gold Rush

---

[12] *Id.* § 77t(g)(2).

[13] *See SEC v. Universal Express, Inc.*, 475 F. Supp. 2d 412, 429-30 (S.D.N.Y. 2007).

[14] *SEC v. Patel*, 61 F.3d 137, 141 (2d Cir. 1995) (quotation marks omitted).

[15] 15 U.S.C. § 77t(g)(1).

Preferred Class B Stock, Preferred Class C Stock, and Common Stock Units – were penny stocks.[16] Defendants admitted the truth of this allegation in their Amended Answer, in which they qualified their admission only as to facts unrelated to that allegation.[17]

Even if defendants had not admitted that Gold Rush's securities were penny stocks, the evidence submitted by the SEC establishes that they were indeed penny stocks. Gold Rush securities are equity securities.[18] None of the offered Gold Rush securities were reported securities or registered on an exchange, nor were they "NMS" securities.[19] According to the Gold Rush offering memoranda, all of the Gold Rush securities and warrants were sold by defendants for less than five dollars per share or warrant.[20] Gold Rush never had

---

[16] *See* Compl. ¶ 15.

[17] *See* Amended Answer ¶ 16.

[18] *See* Declaration of Susannah M. Dunn, counsel for the SEC, ("Dunn Decl.") ¶ 8.

[19] *See id.*

[20] *See* Private Placement Memorandum, Gold Rush Technologies, Series B Preferred Stock, Ex. A to Dunn Decl. (offering 500,000 shares of Series B preferred stock for one dollar per share); Private Placement Memorandum, Gold Rush Technologies, Series C Preferred Stock, Ex. B to Dunn Decl. (offering 300,000 shares of Series C preferred stock for $1.50 per share); Private Placement Memorandum, Gold Rush Technologies, Common Stock Unit, Ex. C to Dunn Decl. (offering units consisting of two shares of common stock and one redeemable warrant to purchase common stock for one dollar per unit with the

net tangible assets exceeding two million dollars or revenues of at least six million dollars during any three year period.[21] This evidence demonstrates that Gold Rush's securities were penny stocks.

*Second,* Becker and Schaefer were persons participating in an offering of penny stock. They engaged in activities for the purpose of issuing, trading, and/or inducing or attempting to induce the purchase or sale of the Gold Rush securities, and all three Gold Rush offerings qualified as offerings of penny stock.[22]

*Finally,* Becker and Schaefer's conduct satisfies the standard for imposing a penny stock bar. Schaefer and Becker, as officers of Gold Rush and the persons who controlled Dillon Scott, organized and directed the egregious Gold Rush offering fraud, which involved three penny stock offerings spanning six and a half years.[23] Becker and Schaefer are clearly repeat offenders. Through their fraud, they raised over $1.3 million from twenty-nine investors.[24] Their

---

warrant exercisable at $1.50 per share).

[21] *See* Dunn Decl. ¶ 9; *see also* Gold Rush Technologies, Inc. 2002 and 2003 Income Statements and 2002 Balance Sheet, Ex. E to Dunn Decl. (showing revenues and assets of less than $200,000 for 2002 and 2003).

[22] *See* Dunn Decl. ¶¶ 6-10; Compl. ¶¶ 1-3, 11-32.

[23] *See* Dunn Decl. ¶ 10; Compl. ¶¶ 1-3, 11-32.

[24] *See* Compl. ¶ 1.

fraud involved a high degree of scienter, as Becker and Schaefer knowingly misused their investor proceeds for their personal benefit.[25] Moreover, prior to forming Dillon Scott and conducting the Gold Rush offerings, Becker was a registered representative associated with eleven broker-dealers from 1989 through 1999, and Schaefer was a registered representative associated with sixteen broker-dealers from 1990 through 2000.[26] Both individuals are in their forties and thus have the opportunity to engage in similar penny stock frauds in the future.[27] Moreover, neither Becker nor Schaefer has accepted any responsibility for his conduct and both have continually flouted the seriousness of the allegations posed by this action. Accordingly, a permanent penny stock bar is appropriate.[28]

---

[25] *See* Dunn Decl. ¶ 10; Compl. ¶ 15.

[26] *See* Dunn Decl. ¶ 10; Compl. ¶¶ 11-12.

[27] *See id.*

[28] *See SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1193-94 (9th Cir. 1998) (upholding a district court's imposition of a permanent director-or-officer bar upon finding, among other things, that the securities violations were egregious, defendant caused the collapse of a federally insured bank, attempted to stymie banking regulators from doing their jobs, is a recidivist, had a high level of scienter, engaged in ongoing and recurrent violations, failed to assume any responsibility for his violations of the law, failed to recognize the wrongful nature of his conduct, and there was a strong likelihood of future violations); *SEC v. Abellan*, 674 F. Supp. 2d 1213, 1223 (W.D. Wash. 2009) (ordering a permanent penny stock bar against a defendant that "organized and carried out a prolonged scheme to defraud investors that involved a high degree of scienter and yielded over $13 million in ill-gotten gains . . . was involved in this scheme at the highest

## V.  CONCLUSION

For the foregoing reasons, the SEC's renewed motion for a penny stock bar is granted. The Clerk of the Court is directed to close this motion (Docket No. 35) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:   New York, New York
         July 8, 2010

---

level and it was an exceptionally egregious violation of the underlying securities law"); *SEC v. Converge Global, Inc.*, No. 04 Civ. 80841, 2006 WL 907567, at *5 (S.D. Fla. Mar. 10, 2006) (ordering a permanent penny stock bar based on scheme to defraud over-the-counter purchasers, a long career and experience in the financial services industry, and the likelihood that defendant's occupation will present future opportunities to violate securities laws).

## -Appearances-

**For Plaintiff:**

James A Clarkson, Esq.
Richard G. Primoff, Esq.
Susannah M. Dunn, Esq.
Securities & Exchange Commission
3 World Financial Center, Room 4300
New York, New York 10281
(212) 336-0060

**For Defendants:**

Edwin Peralta-Millan, Esq.
Law Office of Edwin Peralta-Milan
304 Grand Concourse
Bronx, New York 10451
(718) 585-2320